SHAW, Justice
(concurring in the result).
Nationwide Retirement Solutions, Inc. (“NRS”), entered into agreements with PEBCO, Inc. (“PEBCO”), and the Alabama State Employees Association (“ASEA”) to administer a “Deferred Compensation Plan” (“the Plan”). In connection with this arrangement, NRS and PEBCO entered into an “Administrative *1148 Services Agreement” (“the agreement”) under which NRS made “sponsorship payments” to PEBCO. NRS, PEBCO, and ASEA were ultimately sued in the “Coker litigation” by the participants in the Plan, who challenged the propriety of the sponsorship payments. The three ultimately settled that litigation. PEBCO now claims that NRS must, under the terms of an indemnification clause in the agreement, indemnify PEBCO for its attorney fees accumulated in the course of the Coker litigation.
The indemnification clause at issue states: “NRS agrees to indemnify and hold harmless ASEA and PEBCO ... for an action taken against any of them arising as a result of NRS’s failure to perform its duties under this Agreement.” The particular contractual duty under the agreement that NRS allegedly failed to perform, found in section 7 of that document, is stated as follows:
“NRS hereby agrees to utilize its best efforts and to provide appropriate personnel to include NRS legal counsel, where necessary:
“To assist ASEA and PEBCO in the preparation of a Deferred Compensation Plan and its attendant agreements together with appropriate requests for rulings so that all such documents meet the requirements, in the opinion of the Attorney General of the State of Alabama, of House Bill 91, the Internal Revenue Service, the Securities and Exchange Commission, and Alabama’s statutes and Constitution.”
(Emphasis added.)
On appeal, PEBCO argues that the above language imposes a broad duty on NRS “to create a plan that complied with Alabama law in a manner that did not expose ASEA and PEBCO and their officials to any legal liability.” PEBCO’s brief, at 20. PEBCO appears to allege that the fact that the Coker litigation occurred indicates that this duty was breached.
I see no support in section 7 for the broad duty proposed by PEBCO. Instead, NRS agreed to use its “best efforts” to “assist” PEBCO in preparing and gaming approval of the Plan and the agreement. The existence of the Coker litigation itself does not demonstrate that NRS failed to meet its duty. If NRS used its “best efforts” to “assist” PEBCO in both preparing the Plan (and the agreement) and in requesting “rulings” to ensure that the Plan (and the agreement) met the necessary “requirements,” then it did not breach its duty even if the Coker litigation resulted. Conversely, if NRS failed to provide its “best efforts” to “assist” PEB-CO, then it would have breached its duty even if the Coker litigation had not occurred (or if PEBCO, ASEA, and NRS had been successful in that litigation). In other words, the proper focus is not on the fact that the Coker litigation resulted, but whether NRS breached its specified duty.
As noted in the main opinion, the trial court held in a December 3, 2011, order that NRS was liable under the agreement to indemnify PEBCO. There is no explanation as to how the above language of the agreement required such indemnification under the facts of this case. NRS claims that “the record is completely void of any evidence that NRS failed to utilize its best efforts or that it failed to assist ASEA and PEBCO in the manner required by Section 7.” NRS’s brief, at 25. I see nothing in the arguments before us on appeal establishing that NRS breached its duty under section 7 of the agreement.[9] I thus concur in the result.

. Indeed, there is some evidence in the record indicating that the agreement was, at the di *1149 rection of PEBCO, ASEA, or their agents, not submitted to the scrutiny of regulatory entities. If this is true, then no "assistance” was required of NRS.